UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                                               :
BILL ASHLOCK,                                                    :

                                             Plaintiff,          :          10 Civ. 453 (PAE)
                   -v-                                                 :
                                                                          :          OPINION & ORDER
JONATHAN SLONE,                                     :

                                            Defendant.       :
                                                                          :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Plaintiff Bill Ashlock asserts claims sounding in contract and quasi-contract against his former business associate, defendant Jonathan Slone, alleging that Slone failed to pay Ashlock the value of his equity stake in iX Net Holding Limited ("iX Net"), which they both served as corporate officers.  Pursuant to a stipulation entered on December 1, 2011, the claims against defendants iX Net, Calyon Securities (USA) Inc., CLSA Limited, Setclear Inc., and Setclear Pte. Limited were dismissed, and the only remaining defendant is Mr. Slone.  Dkt. 66.  In this diversity action, Ashlock alleges that Slone's failure to pay him his equity share constitutes breach of contract.  He also brings claims for quantum meruit, unjust enrichment, breach of fiduciary duty, fraud, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and, finally, conversion.  Defendant Slone moves for summary judgment under Federal Rule of Civil Procedure 56(a) in his favor as to all claims.  For the reasons below, the motion for summary judgment is granted in part and denied in part.

I.   **Background**[1]

   **A. Ashlock's Employment with iX Net**

In June 2005, Slone formed iX Net, a Bermuda corporation, to provide third-party, back-office clearing and aggregation services to the securities industry. AC ¶ 6. In April 2005, a few months prior to the official formation of iX Net, Slone and Ashlock began a discussion about working together. Ashlock Aff. Ex. A. On May 25, 2005, Ashlock sent Slone an email expressing his interest in joining the start-up. *Id.* That summer, Slone extended an offer to Ashlock to join iX Net as the Chief Operating Officer (COO). *See id.* Ex. C. During his tenure at iX Net, Ashlock received a salary and was eligible for annual bonus awards. Ashlock 56.1 ¶ 8.

On August 18, 2005, Ashlock and Slone exchanged emails confirming Ashlock's role at iX Net and discussing his equity participation level. Slone Decl. Ex. A. In the first email, Slone offered an equity participation level of "no less [than] 3% of iX Net." *Id.* In the second email, Ashlock sought to clarify this point and suggested that his equity level be "no less than 3% with a target level between 5 to 8%." *Id.* In the third and final email, Slone confirmed "[let's] say no less than 4% and we will move towards the target as we build the company further." *Id.* The parties agree that this exchange of emails constitutes an enforceable contract between Ashlock and Slone ("Contract"), entitling Ashlock to between 4% and 8% of the company's equity. *See* Def.'s Br. 9; Pl.'s Br. 20–21.

---

[1] The Court's account of the underlying facts is drawn from the Amended Complaint (Dkt. 67) ("AC"), the parties' Local Rule 56.1 Statements (Dkts. 84 & 89), the Declaration of Jonathan Slone in Support of Defendant's Motion for Summary Judgment (Dkt. 82) ("Slone Decl."), with attendant exhibits, the Affidavit of Bill Ashlock in Opposition to Defendant's Motion for Summary Judgment (Dkt. 87) ("Ashlock Aff."), with attendant exhibits, and the Affirmation of Louis Ginsberg, Esq. in Opposition to Defendant's Motion for Summary Judgment (Dkt. 86) ("Ginsberg Aff."), with attendant exhibits, including the depositions of Bill Ashlock ("Ashlock Dep.") and of Jonathan Slone ("Slone Dep.").

On October 30, 2006, Slone received a payment of $2,534,985 from CLSA Limited ("CLSA") in connection with a proposed sale of iX Net. Slone Decl. ¶ 10. That payment was made directly to Slone personally, not to the corporate accounts of iX Net. Slone Dep. 105. On November 7, 2006, that sale was executed in a document entitled the "Heads of Agreement" which was signed by Slone and an officer of CLSA. Slone Decl. ¶ 10. Ashlock was not a party to the negotiations with CLSA, though he was shown drafts of the Heads of Agreement. Ashlock Dep. 59–60. Ashlock was aware that iX Net had been sold to CLSA, as evidenced by his emails to CLSA executives in which he references the fact of the sale. Slone Decl. Ex. F. Following the sale of iX Net, the company's name changed to SetClear. Slone 56.1 ¶ 21. In 2007, Ashlock relocated to Singapore where he continued to build out SetClear's operations for over three years. Ashlock 56.1 ¶¶ 23, 25. Finally, in July 2008, Ashlock resigned from SetClear. *Id.* ¶ 26.

### B.  2006 Payment to Ashlock

At issue in this case is whether Ashlock was ever paid his equity share of the value of iX Net.[2] As follows, it is undisputed that, in October 2006, Ashlock was paid $200,000 from iX Net, but the parties dispute whether that payment represented Ashlock's equity stake, as Slone argues, or was a bonus or other consideration for services rendered, as Ashlock posits. The events and communications most relevant to that dispute are as follows.

---

[2] It should be noted at the outset that the only equity stake at issue in this litigation and, accordingly, addressed in this opinion, is Ashlock's stake in iX Net. The Contract regarding the equity stake is between Ashlock and Slone, each in his individual capacity, and, therefore, Ashlock's claims do not extend to any possible stake he may or may not have had in SetClear (the later iteration of iX Net after it was sold to CLSA). Moreover, Slone confirmed in his deposition that he "wasn't involved" with SetClear. Slone Dep. 27. For this reason, any evidence in the record referencing a possible "founder's share" or "founder's status" in SetClear, while potentially informative, is not necessarily relevant to, and certainly not dispositive of, the breach of contract claim as to Ashlock's equity stake in iX Net.

3

On October 25, 2006, Slone sent an email to Ashlock saying, "i need u to bill me 200000 for services to Ixnet with your tax id.  Danny needs to do the same for 10000.  Can u sort 2day?" Slone Decl. Ex. D.

On October 30, 2006—the same day that Slone received the payment from CLSA and eight days before the execution of the sale of the company—Ashlock received a payment for $200,000 from iX Net.  Ashlock Aff. Ex. F.  Also on October 30, 2006, Danny Nadalalicea, another iX Net employee, received a payment for $10,000.  Ginsberg Aff. Ex. J.  The payments to Ashlock and Nadalalicea were accounted for in iX Net's general ledger as payments to "outside consultants."  *Id.* at Ex. L.  Ashlock's salary was not ordinarily paid by iX Net.  Instead, it was disbursed to him by Calyon Securities (USA) Inc., ("Calyon") a French retail and investment bank to which Ashlock was seconded.[3]  *See* Slone Decl. Ex. C.

In an email to Slone on January 25, 2007, Ashlock broached the subject of a bonus payment for 2006.  Slone Decl., Ex F.  The conversation initially concerned a bonus payment to Mr. Nadalalicea, who was the only other iX Net employee eligible for a bonus aside from Slone and Ashlock.  Slone replied to Ashlock that he was not inclined to offer a bonus to Mr. Nadalalicea given that "it is unlikely that clsa would want to pay anything having just purchased the company and having no revenues."  *Id*.

The next day, January 26, 2007, Ashlock communicated by email with Mark Mattheys, an officer of CLSA, about whether he should ask Slone for a bonus for himself.  Slone Decl. Ex. F.  Ashlock specifically stated to Mattheys that he believed that "when CLSA purchased iX

---

[3] Calyon was, at all times relevant to this dispute, a majority owner of CLSA and, in that capacity, provided operational support to iX Net/SetClear.  The submissions indicate that Ashlock had been "seconded" to Calyon.  This meant that, while he remained an employee of iX Net, he worked out of Calyon's New York offices and his salary and benefits were administered by Calyon.

4

Net/SetClear, there was a clear understanding that the payment was not a 2006 bonus" and, therefore, he was still eligible for a bonus for 2006. *Id.* Mattheys replied:

> I had understood from Slone in our discussions last year that he was making a payment to you based on the sale of IX Net to CLSA which took place in and or around October last year. This could well mean that from Slone's standpoint he was responsible for making a payment to you which would have compensated you up until the time CLSA purchase[d] IX Net.

*Id.* Plaintiff's counsel represented at argument that Ashlock never received a bonus in 2006.

In October 2007, Ashlock received another payment of $200,000 from iX Net. Ashlock 56.1 ¶ 9. The parties agree that the 2007 payment was an incentive reward for securing a valuable account with Bloomberg Trade Book. Ashlock Dep. 141; Slone 56.1 ¶ 21.

Upon his departure from SetClear in 2008, Ashlock asked that he be paid the value of his equity share of iX Net pursuant to the Contract of 2005. Despite a protracted exchange with Laurie Young of CLSA, Ashlock was never told the status of his equity share in iX Net. *See* Ashlock Aff., Exs. I, K, L.

### C. The Present Lawsuit

On January 20, 2010, Ashlock commenced this lawsuit to recover the value of his equity stake in iX Net. He asserts eight causes of action: (1) breach of contract, (2) quantum meruit, (3) unjust enrichment, (4) breach of fiduciary duty, (5) fraud, (6) promissory estoppel, (7) breach of the implied covenant of good faith and fair dealing, and (8) conversion. In essence, Ashlock claims, the $200,000 payment he received in 2006 payment did not represent his equity stake. Consequently, Slone is in breach of his duty to pay Ashlock a 4% to 8% equity stake in iX Net.

Slone moves for summary judgment as to all claims. He argues that the October 2006 payment satisfied his contractual obligation, and that Ashlock's quasi-contract claims are not

5

viable in light of the parties' enforceable agreement.  On July 9, 2012, the Court heard oral argument on this motion.

## II. Applicable Legal Standards

To prevail on a motion for summary judgment under Federal Rule of Civil Procedure 56(a), the movant must prove "that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  The movant bears the burden of proof of demonstrating the absence of a material question of fact; in making this determination, the court must view all facts "in the light most favorable" to the non-movant.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).  Nonetheless, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  A genuine issue of material fact only exists "where the evidence is such that a reasonable jury could decide in the non-movant's favor."  *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008).  Moreover, only disputes regarding "facts that might determine the outcome of the suit under the governing law" will bar a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Discussion

### A. Breach of Contract Claim

Ashlock's most substantial claim is for breach of contract.  He claims that Slone failed to pay him the value of his equity share in iX Net, as had been provided for in the emails that he and Slone exchanged on August 18, 2005.  The exchange ended with Slone proposing "[let's] say no less than 4% and we will move towards the target [of 5–8%] as we build the company further."  Slone Decl. Ex. A.  The parties agree that this is a valid and binding agreement

between Ashlock and Slone.  *See* Def.'s Br. 9; Pl.'s Br. 20–21.  Accordingly, under the Contract, Slone was obligated to pay Ashlock 4% to 8% of the value of the company.

To prevail on a breach of contract claim under New York state law, a plaintiff must show "'the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages.'"  *Feingold v. Chrismas*, 818 F. Supp. 2d 763, 768 (S.D.N.Y. 2011) (quoting *Harris v. Seward Park Housing Corp.*, 79 A.D.3d 425, 426 (1st Dep't 2010)). The existence of the agreement and plaintiff's performance of work for iX Net in consideration for a salary and an equity stake in the company are not in dispute.  The dispute instead turns on one issue: whether the equity payment was ever made.

In assessing that claim, the central issue is the $200,000 payment which Ashlock received from Slone in October 2006.  Slone argues that this payment represents Ashlock's share of the equity in iX Net; Ashlock counters that it was performance incentive compensation, paid to him as a reward for securing outsourcing business from Bloomberg Trade Book.  There is evidence to support both of these characterizations, as the Court now reviews.

To begin with, Ashlock was owed 4% to 8% of the value of iX Net at the time it was sold to CLSA in November 2006 for $2,534,985; this translates into between approximately $101,000 and $202,000.  Slone argues, with some force, that, because $200,000 is just shy of 8% of the sale price of iX Net, that payment logically represents Ashlock's equity share.

The timeline of the sale is consistent with that thesis.  The check made out to Ashlock was written on October 30, 2006.  Ashlock Aff. Ex. F.  At first blush, one might question why Slone would have paid Ashlock his equity stake eight days before the sale was final, on November 7, 2006.  That concern is fully accounted for by the fact that Slone received his payment (the $2,534,985) from CLSA on October 30, 2006, the very same day that Ashlock was

7

paid the $200,000; as defense counsel explained at argument, the closing of the deal was a mere "formality" and thus payment did not have to await the formal closing. The fact that Ashlock was paid almost exactly 8% of the deal's value by Slone on the day that Slone himself received 100% of the value of the deal is potent circumstantial evidence that the $200,000 represented Ashlock's share of the equity.

However, although the amount and timing of these payments favors Slone's theory, the documentation of the transaction is more equivocal. The check issued to Ashlock on October 30 was drawn from the corporate account of iX Net; it was recorded by the iX Net's accountant in the general ledger as a payment to an "outside consultant." Ginsberg Aff. Ex. L. The proceeds of the sale of iX Net did not, however, get paid into iX Net's accounts; instead, they were paid to Slone directly. At his deposition, Slone explained that he, personally, was the "vendor" (*i.e.*, seller) of iX Net, and thus the proceeds of the sale of iX Net went to him personally, not to iX Net. Slone Dep. 105–06. However, Slone proceeded to pay Ashlock not from Slone's personal account, but from iX Net's; the record does not disclose any intervening payment by Slone to iX Net. The fact that Ashlock's $200,000 is not clearly traceable to the proceeds of the sale of the company, and the fact that this payment was made by iX Net, complicates Slone's argument. It supplies a modest circumstantial inference that the payment to Ashlock represented something other than his equity stake.

The record also contains a series of emails that support competing inferences as to the nature of the October 2006 payment. In opposing summary judgment, Ashlock points to an email dated October 25, 2006—five days before the payment—in which Slone tells him "i need u to bill me 200000 *for services* to ixnet with your tax id. Danny needs to do the same for 10000." Ashlock Aff. Ex. D (emphasis added). Slone's email characterization of the payment as

8

"for services" favors Ashlock; it supports the inference that the $200,000 was paid to Ashlock as compensation for services rendered, not for his share of the equity.

Ashlock also argues that iX Net's payment of $10,000 the same day to Mr. Nadalalicea—who did not have an equity stake—further supports the claim that the payment was not equity. From an email relating to these payments, it does appear that the payments are related. Because the record is otherwise silent as to the nature of the payment to Mr. Nadalalicea or the reasons it was paid on the same day, the Court does not regard this fact as consequential.

Slone, in turn, points to a January 2007 email exchange between Ashlock and Mark Mattheys of CLSA in which Ashlock raises the possibility of his receiving a bonus for the 2006 fiscal year. Ashlock states, referring to the $200,000 paid to him in October 2006, that "there was a clear understanding that *the payment was not a 2006 bonus*." Slone Decl. Ex. F (emphasis added). Mattheys replies to Ashlock that he "had understood from Slone in our discussions last year that he was making a payment to you based on the sale of IX Net to CLSA which took place in and or around October last year." *Id*. This exchange is strong circumstantial evidence favoring Slone, because it indicates that the $200,000 payment "based on the sale" represented Ashlock's equity stake. Notably, Ashlock did not dispute Mattheys's characterization.

In light of this email, Ashlock cannot credibly argue that the $200,000 represented an annual bonus;[4] thus, the onus is on him to explain what, exactly, the $200,000 was for. Ashlock argues that the payment was not a standard bonus but, instead, a "performance award" rewarding him for work he had done at iX Net in connection with the Bloomberg Trade Book account.

---

[4] It is also implausible that the $200,000 reflected a standard bonus, because the $200,000 check was issued by iX Net, whereas Calyon, at the time, was responsible for paying Ashlock's salary and presumably would have paid him a bonus, as that term is conventionally understood.

Ashlock Dep. 83. Supporting this inference, Ashlock notes that in 2007, he secured a payment (also $200,000) for securing business with Bloomberg.

Finally, the two principals gave competing deposition testimony on the critical issue. Ashlock testified that, in a conversation with Slone, Slone had indicated that the 2006 payment represented a reward for work on the Bloomberg account. *See id*. Slone did not address that conversation but implicitly denied it: He testified that the $200,000 paid to Ashlock was "the Heads of Agreement payment . . . from the proceeds of the sale of iX Net."[5] Slone Dep. 102.

The Court also notes that the record leaves unanswered a number of potentially relevant factual issues. There is not, it appears, solid evidence as to iX Net's performance award compensation scheme at that time, which would help test Ashlock's claim that the $200,000 payment represented performance incentive compensation to him for his work on the Bloomberg account. Nor have the parties adduced evidence as to iX Net's practice with regard to paying incentive awards, separate and apart from annual bonuses. Strikingly, at argument, neither counsel was able to specify with clarity what the different categories of compensation were, or explain, comprehensively, which entity—iX Net or Calyon—was responsible for paying each them. The Court appreciates that iX Net was, at the time, a start-up company that doubtless lacked codified procedures for issuing (or memorializing) incentive awards, but the lack of hard evidence on this point (beyond the principals' conclusory statements) complicates Slone's bid for summary judgment on the contract claim.

In sum, the competing inferences supplied by the evidence reviewed above, and the deficiencies noted in the factual record, collectively show that Ashlock has "'come forward with

---

[5] The Court's review of the deposition testimony taken in this matter is limited to the excerpts which were provided in the parties' submissions. To the extent that further relevant information exists elsewhere in the depositions regarding the 2006 payment, those portions of the testimony are not presently in the record and, therefore, do not enter into the Court's analysis.

specific facts showing that there is a *genuine issue* for trial.'" *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). To be sure, the weight of the evidence strongly appears to favor Slone. But, as the Court noted at argument, there is evidence in the summary judgment record that favors each side. Because all inferences are required to be drawn in favor of the non-movant, *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995), the Court is compelled to find a genuine dispute of material fact, and deny Slone's motion for summary judgment on the breach of contract claim.

### B. Quasi-Contract Claims: Quantum Meruit, Unjust Enrichment, and Promissory Estoppel

Ashlock has also brought claims, under quasi-contract, for quantum meruit, unjust enrichment, and promissory estoppel. Because "quantum meruit and unjust enrichment are not separate causes of action," they may be addressed as a single claim.[6] *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (internal quotation marks omitted).

Under New York state law, the existence of a valid contract bars recovery in quasi-contract. *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 414 (S.D.N.Y. 2011). The parties have agreed, both in their submissions and at argument, that the August 18, 2005 email exchange constitutes a valid and binding agreement between the parties. Because Ashlock has a remedy available through enforcement of this agreement, his actions in quasi-contract, to the extent he is pursuing his equity stake, are duplicative of the contract claim, and cannot stand. *See Mid-Hudson*, 418 F.3d at 175.

---

[6] The two claims are linked in that unjust enrichment is a necessary element that must be proved in order to recover on a claim of quantum meruit. For this reason, they are generally treated as a single claim, rather than two separate claims. *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 768 F. Supp. 89, 96 (S.D.N.Y. 1991), *rev'd on other grounds*, 959 F.2d 425 (2d Cir. 1992).

It is clear that the claims are duplicative of the contract claim. Both the quantum meruit and unjust enrichment claims generically allege that Ashlock is owed money for services rendered. But Ashlock has pointed to nothing in the record to support the claim that he was entitled to any moneys not paid him except as to his equity stake.[7] It is, therefore, appropriate to grant summary judgment on these two claims to Slone.

As to Ashlock's promissory estoppel claim, it alleges that he relied to his detriment on Slone's promise of an equity share in iX Net when he decided to move to Singapore in 2007 to continue working for SetClear. Here too, the existence of a valid agreement between the parties bars recovery under promissory estoppel, because Ashlock's remedy would be as under his claim for breach of contract. *See Bader*, 773 F. Supp. 2d at 414–15 (citing *Kwon v. Yun*, 606 F. Supp. 2d 344, 368 (S.D.N.Y. 2009)); *see also Holmes v. Lorch*, 329 F. Supp. 2d 516, 527 (S.D.N.Y. 2004) ("Promissory estoppel is a rule applicable only in the absence of an enforceable contract.") (quotation marks omitted). Because the Court has found a valid written agreement governing Ashlock's equity stake in iX Net, his promissory estoppel claim is fatally duplicative.

For these reasons, the Court grants summary judgment to Slone on all of Ashlock's quasi-contract claims—quantum meruit, unjust enrichment, and promissory estoppel. Each is either duplicative of the breach of contract claim or raises a general claim of entitlement to money that is unsupported by record evidence.

---

[7] Ashlock appears to raise a second claim of unjust enrichment, namely that Slone was unjustly enriched by failing to pay Ashlock his equity share. However, under New York law, unjust enrichment cannot be used as a means to recover for the same breach twice. *See, e.g.*, *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 344 (S.D.N.Y. 2008) (citing *State v. Indus. Site Serv., Inc.*, 52 A.D.3d 1153, 1161 (3d Dep't 2008)). Thus, this claim also fails because it is duplicative of Ashlock's contract claim.

### C.  Breach of Fiduciary Duty

Next, Ashlock alleges that Slone breached his fiduciary duty when he sold iX Net to CLSA in November 2006.  Ashlock claims that he was never told about the sale and did not learn of its specific terms—including the amount for which the company was sold—until discovery took place in this lawsuit.  Ashlock posits that a partnership was in place between him and Slone, under which Slone owed a fiduciary duty to Ashlock.  To support this claim, Ashlock points to two June 2005 emails in which Slone states "I would like to discuss the possibility of your joining iX Net as a partner," Ashlock Aff. Ex. A., and later, "[it's] going to be your company as well."  *Id*. Ex. C.

The absence of an explicit partnership agreement executed in connection with the formation of iX Net is not itself fatal to Ashlock's claim; a partnership may be established through circumstantial evidence.  *See Sacco v. Iselin*, No. 84-cv-877, 1986 WL 14908, at *3 (S.D.N.Y. Dec. 19, 1986).  Under New York State law, whether a partnership was established turns on the intentions of the parties, as revealed through a combination of factors.  *Herman v. Blockbuster Entm't Grp.*, 18 F. Supp. 2d 304, 314 (S.D.N.Y. 1998).  Courts in the Second Circuit apply a nine-factor test to determine, under New York State law, whether there is a partnership-in-fact.  *See id.*; *Mikhlyn v. Bove*, No. 08-cv-3367, 2008 WL 4610304, at *9 (E.D.N.Y. Oct. 15, 2008); *Rivkin v. Coleman*, 978 F. Supp. 539, 542 (S.D.N.Y. 1997).  These are: (1) sharing of profits, (2) sharing of losses, (3) ownership of partnership assets, (4) joint management and control, (5) joint liability to creditors, (6) intention of the parties, (7) compensation, (8) contribution of capital, and (9) loans to the organization.  *Brodsky v. Stadlen*, 138 A.D.2d 662, 663 (2d Dep't. 1988).

While none of these factors is determinative, *id.*, some weigh more heavily than others. Specifically, an agreement to share losses is particularly significant in proving the existence of a partnership. *In re Steinbeck v. Gerosa*, 4 N.Y.2d 302, 317 (1958) ("An indispensable essential of a contract of partnership or joint venture . . . is a mutual promise or undertaking of the parties to share in profits of the business *and submit to the burden of making good the losses*.") (emphasis in original). Here, this factor is especially problematic for Ashlock's claim. Although the Contract demonstrates his interest in the company in the form of an equity stake, there is nothing in the record, besides his conclusory after-the-fact statements in affidavits, to support his claim that he was, and would have been, actually responsible for the losses. This is not enough to overcome a motion for summary judgment. *BellSouth Telecomm., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996); *see also* Fed. R. Civ. P. 56(e).

Similarly, there is no evidence to support Ashlock's claim that he would be liable to creditors for any debts held by iX Net. The June 2005 emails which state that Ashlock was to be a "partner" and it would "be [his] company too" do not support his contention. Ashlock Aff. Exs. A & C. Ashlock cannot rely solely on Slone's use of the word "partner" in an email to demonstrate the existence of a partnership—the email was an informal exchange, and it is entirely plausible, if not compellingly clear, that Slone, who is not an attorney, was not attempting to use "partnership" in that exchange in a legally decisive way. Indeed, it is well-settled that "calling an organization a partnership does not make it one." *Kidz Cloz, Inc. v. Officially for Kids, Inc.*, 320 F. Supp. 2d 164, 174 (S.D.N.Y. 2004) (quoting *Brodsky*, 138 A.D.2d at 663). Slone, for his part, vigorously denies that it was his intention to create a partnership with Ashlock.

Taking together the lack of evidence in the record to support the claims that there was a sharing of losses and joint liability to creditors, as well as the slender to non-existent evidence with respect to the other relevant factors, the Court concludes, comfortably, that the arrangement between Ashlock and Slone was not a legal partnership. Slone, therefore, did not owe Ashlock a fiduciary duty. Accordingly, summary judgment is granted in favor of Slone on his fiduciary duty claim.

### D. Fraud

Ashlock appears to allege two related, yet distinct, claims of fraud: First, that Slone defrauded him by misrepresenting the status of his equity stake and enticing him to move to Singapore, and, second, that Slone fraudulently concealed from him the sale of iX Net to CLSA. Under New York State law, to recover under fraud, the claim must arise from a legal duty that is separate and apart from the duty to perform under the contract. *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (dismissing a fraud claim where the acts alleged were merely false statements by the defendant regarding his intent to perform under the contract).

The first claim—that Slone misrepresented the status of Ashlock's equity stake—is entirely duplicative of the contract claim. The harm alleged is that Slone convinced Ashlock that his equity stake was still intact when it had, in fact, already been paid out. Insofar as the claim of fraudulent misrepresentation alleges the failure to perform the terms of an enforceable, written agreement, the fraud claim must give way to the contract claim. *See Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996). Because there is an enforceable contract here, Ashlock cannot succeed on this claim.

The second claim—that Slone fraudulently concealed from Ashlock the details surrounding the sale of iX Net to CLSA—is, however, not duplicative of the contract claim. To prevail on a claim of fraudulent concealment under New York State law, a plaintiff must prove (1) the existence of a duty to disclose, (2) knowledge of the material facts by the party with the obligation to disclose, (3) scienter, (4) reliance, and (5) damages. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, Nos. 94-cv-9111 & 95-cv-3506, 1997 WL 3268, at *13-14 (S.D.N.Y. Jan. 3, 1997), *aff'd*, 404 F.3d 566 (2d Cir. 2005) (internal citation omitted).

The most difficult hurdle here for Ashlock is proving the duty to disclose. Such a duty can arise in three circumstances: a fiduciary relationship, under the "special facts doctrine," or where one party has made a partial statement, the full meaning of which can only be made clear upon further disclosure. *Id.* As stated above, there is no fiduciary relationship between these parties; thus the success of Ashlock's claim hinges on the latter two options.

The "special facts doctrine" refers to a situation where one party has superior knowledge that the other party cannot obtain and knows that the other party is acting based on erroneous information. *Id.* Slone did, indeed, possess superior knowledge regarding the sale of iX Net. The record suggests, however, that Ashlock had the ability to access information about the sale. He had been shown a draft of the Heads of Agreement, and, although he argues that the draft was mere boilerplate and did not contain any details of the transaction, this fact did not preclude Ashlock from inquiring further. Moreover, the fact that the draft was boilerplate and vague is unhelpful to Ashlock: It puts the onus on him, as a businessperson, and indeed one who purports to have believed himself to be a partner in the company, to pursue and probe the issue with his business associate/partner, Slone, to unearth more facts. Similarly, there is insufficient evidence

in the record to suggest that Ashlock would have done anything differently, *e.g.*, with respect to his employment status, had he known the details of the sale of iX Net.[8]

Finally, a duty can arise from a partial disclosure made by one of the parties. *Aniero*, 1997 WL 3268, at *13. This obligation ordinarily applies to parties on opposing sides of a business transaction, not to associates in the same company. *See Newbro v. Freed*, 409 F. Supp. 2d 386, 401 (S.D.N.Y. 2006) (noting that duty to disclose often arises in the context of a commercial transaction between plaintiff and defendant); *Junius Const. Co. v. Cohen*, 257 N.Y. 393, 400 (1931) (Cardozo, J.) (discussing the duty of a seller to complete a partial disclosure made to a buyer). Ashlock and Slone were not on opposite sides of a transaction. They were merely business associates, one of whom was party to a transaction and one of whom was, evidently, passive, and failed to demand further information about that transaction. Although Slone's disclosure to Ashlock could have been more complete, there is no legal duty which obligated him to make it so.

Ashlock has not pointed to sufficient evidence in the record to establish a legal duty to disclose. Therefore, as to the fraud claim, there exist no triable issues regarding disputed facts, and summary judgment is granted in favor of Slone on this claim.

### E.  Breach of Implied Covenant of Good Faith and Fair Dealing

Ashlock also alleges a breach of the implied covenant of good faith and fair dealing. To support this claim, he alleges that Slone breached the covenant when he failed to pay out the value of Ashlock's equity stake in iX Net. Slone responds that this claim is duplicative of the

---

[8] The Amended Complaint alleges that Ashlock "justifiably relied on Defendant Slone's representation by continuing to work for Defendant Slone in Singapore to help build up Set Clear," AC ¶ 55, suggesting that Ashlock would not have gone to work overseas but for Slone's representation that the equity stake was still intact. This may well be so, but this fact relates to the fraudulent misrepresentation claim—not the concealment claim—and, therefore, does not help Ashlock prevail on the final element of the "special facts doctrine."

17

breach of contract claim. The Court agrees with Slone. *See, e.g.*, *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (noting that New York law does not recognize breach of implied covenant of good faith and fair dealing based on a contract as a separate cause of action where breach of contract is also pled); *IDC Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997). Thus, to the extent that Ashlock bases this claim on the same facts underlying the breach of contract, this claim cannot go forward.

The Court notes, however, that in opposing the instant motion for summary judgment, Ashlock appears to have changed his theory as to why Slone is liable on this claim. Ashlock now claims that Slone breached the implied covenant when he engaged in "secretive self-dealing to sell iX Net/SetClear." Pl.'s Br. 22. This is sufficiently distinct from the breach of contract claim to stand as a separate cause of action. Nonetheless, Ashlock has not presented enough evidence to defeat summary judgment on this claim.

New York State law recognizes an implied covenant of good faith and fair dealing in which "neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (citing *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87 (1933)). The fruits of the Contract are Ashlock's 4% to 8% stake in the equity of iX Net. Ashlock alleges that Slone's sale of the company to CLSA interfered with his right to the fruits of the Contract because, had be known about the sale, he could have secured a buyer at a higher price and, accordingly, made his equity stake more valuable. There is, however, not nearly enough evidence in the record to support this factual assertion.

Because Ashlock has failed to come forward with sufficient evidence of a genuine dispute of material fact on this claim, summary judgment is awarded to Ashlock.

### F. Conversion

Ashlock's final claim is that Slone converted the value of his equity stake in iX Net. This claim fails for a number of reasons. First, under New York State law, a tort claim of conversion cannot be predicated on a breach of contract. *Fraser v. Doubleday & Co.*, 587 F. Supp. 1284, 1288 (S.D.N.Y. 1984); *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 884 (1st Dep't 1982). Because the claim of conversion mirrors the claim that Slone breached the Contract by failing to pay Ashlock his equity share, he cannot recover under a claim of conversion.

Second, an allegation of converted money must be based on a "definite sum" that is "sufficiently identifiable." *Newbro v. Freed*, 409 F. Supp. 2d 386, 395 (S.D.N.Y. 2006) (citations omitted). Generally, New York law has determined that a specific amount from a named bank account satisfies this requirement. *Id.* Although the Contract identifies a specific percentage range of Ashlock's equity stake in iX Net, this amount is not sufficiently definite to allow Ashlock to recover under conversion.

Third, and finally, New York law requires the claimant to have had "ownership, possession, or control of the money" before its conversion. *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 433 (S.D.N.Y. 1998) (internal quotation marks omitted). Ashlock claims never to have had ownership or possession of his equity stake in iX Net—hence, this lawsuit. Therefore, he cannot recover under the tort of conversion.

For these reasons, summary judgment is granted in favor of Slone on the conversion claim.

## CONCLUSION

For the reasons stated herein, Slone's motion for summary judgment as to the breach of contract claim is DENIED. Slone's motion for summary judgment on the quantum meruit, unjust enrichment, promissory estoppel, breach of fiduciary duty, fraud, breach of implied covenant of good faith and fair dealing, and conversion claims is GRANTED.

The Clerk of Court is directed to terminate the motion at docket entry number 80.

The sole remaining claim in the case is for breach of contract. The maximum value of that claim, if established at trial, is measured at between 4% and 8% of the equity value of the company as of the date of its sale ($2,534,985), *i.e.*, between approximately $101,000 and approximately $202,000. Counsel for the plaintiff and defendant are directed to meet in person for at least one hour within 14 days of the date of this Order to discuss potential settlement of this case. In the absence of a settlement, the Court will meet with the parties on August 27, 2012 at 11:00 a.m. to set a date for trial.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 26, 2012
       New York, New York